# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN - NORTHERN DIVISION

In the Matter of:

LEIGH-ANN WISEMAN JOHNSON

        Debtor

_____/

CASE NO. 20-21437
CHAPTER 13
HON. DANIEL S. OPPERMAN

TODD H. NYE (P59301)
Attorney for Debtor
THE NYE LAW OFFICE
10393 S. Merrio Rd.
Roscommon, MI 48653
(989) 281-1437
----------------------------------
BRIAN C. GRANT (P71066)
Attorney for Lance Johnson
O'REILLY RANCILIO P.C.
Sterling Town Center
12900 Hall Road, Suite 350
Sterling Heights, MI 48313-1151
_____/

## REPLY OF LANCE JOHNSON FOR RELIEF FROM THE AUTOMATIC STAY

Lance Johnson ("Mr. Johnson") files the following Reply Brief in reply to Debtor's Amended Response to Motion for Relief from Stay by Creditor Lance Johnson and in support states as follows:

1. Debtor argues that the divorce was not settled because there was no signed agreement. In order to clarify the history of the negotiations, there was a

pending trial date on September 29, 2020. Prior to that trial date, the parties engaged in mediation on June 17 and September 17, 2020. At the mediation on September 17th, there was a minor outstanding issue to be decided with regard to how long Mr. Johnson would have to refinance the house that he was being awarded. On September 22, 2020, Mr. Johnson, through counsel, advised Debtor's counsel that he required one year to refinance the house and the parties considered the matter settled in light of the impending trial date and agreement. However, before the trial date and before the settlement could be placed on the record, Debtor filed for bankruptcy without even notifying her divorce attorney prior to doing so. As a result, Mr. Johnson considered the matter settled although he admits that the settlement would have been unenforceable due to the lack of a writing or record.

Curiously, Debtor appears to argue that there was no mediation because a report was not filed from the mediator in the register of actions. Perhaps because Debtor's counsel is unfamiliar with family law matters, in particular in the County of Macomb where the parties reside. Furthermore, opposing counsel argues that undersigned counsel, an officer of the court, has misrepresented whether there was a mediation conducted. That allegation is preposterous and Debtor is fully aware that there were two days

2

of mediation conducted. Regardless, Exhibit A contains an email from the mediator's office confirming that mediation did occur on two different dates.

2. Debtor is wrong when she says that Mr. and Mrs. Johnson can still get divorced without resolving property issues. MCR 3.211(B)(3) states that a judgment of divorce must include "a determination of the property rights of the parties." The court in *Yeo v. Yeo* interpreted this statute to mean that all of the property should be disposed of in a judgment of divorce as to ensure, "that divorce cases are not tried piecemeal subjecting the parties to a multiplicity of orders that could be appealed." *Yeo v. Yeo*, 214 Mich. App. 598, 600–01, 543 N.W.2d 62, 63–64 (1995). It is also a violation if the court just makes the determination for the parties to arbitrate for the disbursement of real property or otherwise leaves the question of property distribution for a later date, "A judgment that leaves the property distribution for later resolution violates MCR 3.211(B)(3)" *Shatzman v. Shatzman*, No. 222943, 2001 WL 1081594, at *5 (Mich. Ct. App. Sept. 14, 2001). This idea is mirrored in many cases that analyze the holding of Yeo, "By incorporating the impending, but incomplete, personal property arbitration into the judgment of divorce, the trial court failed to make a determination of the personal property rights of the parties. Contrary to the purpose of MCR

3

3.211(B)(3), the piecemeal judgment of divorce and arbitration award subjected the parties to a multiplicity of orders that could be appealed." Exhibit B: *Bonner v. Bonner*, No. 288733, 2009 WL 3014534, at *1 (Mich. Ct. App. Sept. 22, 2009). This is because under Yeo, the court's determination of property rights cannot be decided at a later date.

3. Debtor's allegations that the "Canadian" business was lucrative and has substantial cash income is without merit. The business is a small convenience store located on a Native American reservation in Canada. The business owes approximately $500,000 to its vendors and has been severely hard hit by Covid-19 restrictions and the closing of the Canadian borders. Mr. Johnson insists that all taxes were paid and income reported as required. Moreover, any issues of a possible tax exposure can be (and often is) addressed in the state court through various hold harmless provisions with regard to tax liability. In reality, Debtor is simply using the extortionate threat of tax liabilities to attempt to force Mr. Johnson into accepting a patently unfair divorce resolution. It is important to note in this regard that there is no audit threatened or pending and Debtor is using these threats only in an attempt to coerce Mr. Johnson into forgoing his rights to marital property.

4

O'REILLY RANCILIO P.C.

*/s/ Brian C. Grant*

_____
BRIAN C. GRANT (P71066)
Attorney for Lance Johnson
12900 Hall Road, Suite 350
Sterling Heights, MI 48313-1151
(586) 726-1000
bgrant@orlaw.com

DATED: August 20, 2021

# EXHIBIT A

**McGrail, Linda**

**From:** Lori Henderson <lori@lmh-familylaw.com>
**Sent:** Thursday, August 19, 2021 3:51 PM
**To:** McGrail, Linda
**Subject:** Johnson v Johnson Mediation 2019-3881-DM

Dear Ms. McGrail:

This email will confirm that Ms. Henderson mediated this matter on June 17, 2020 and, after two adjournments, again on September 17, 2020.

If you need anything further, please let me know.

*Colleen Ott*
Law Offices of Lori M. Henderson, P.C.
21941 Nine Mile Road
St. Clair Shores, Michigan 48080
(586) 776-5144 Telephone
(586) 776-5110 Facsimile

# EXHIBIT B

# STATE OF MICHIGAN

# COURT OF APPEALS

TAMMY K. BONNER,

        Plaintiff-Appellee,

v

RICHARD K. BONNER,

        Defendant-Appellant.

UNPUBLISHED
September 22, 2009

Nos. 288733; 291202
Macomb Circuit Court
Family Division
LC No. 2006-002201-DM

Before: Donofrio, P.J., and Wilder and Owens, JJ.

PER CURIAM.

In Docket No. 288733, defendant appeals as of right an order adopting an arbitrator's award. In Docket No. 291202, defendant appeals as of right an order granting plaintiff's motion to modify parenting time, denying defendant's motion to modify parenting time, and denying plaintiff and defendant's motions to modify custody.[1] We affirm in part, vacate in part, and remand for further proceedings.

Plaintiff and defendant married in 1989. They had one child, Adam, born in 1994. Plaintiff filed a divorce complaint in 2006, and the trial court entered a judgment of divorce in 2007.

## MCR 3.211(B)(3)

Defendant argues that the trial court violated MCR 3.211(B)(3) when it issued the judgment of divorce without making a final determination regarding the division of personal property, but instead, ordered the parties to binding arbitration. This Court reviews issues of statutory and court rule construction and application de novo. *Haliw v City of Sterling Heights*, 471 Mich 700, 704; 691 NW2d 753 (2005).

---

[1] This Court consolidated the appeals in Docket Nos. 288733 and 291202. *Bonner v Bonner*, unpublished order of the Court of Appeals, entered April 15, 2009 (Docket Nos. 288733 and 291202).

-1-

In *Yeo v Yeo,* 214 Mich App 598, 600; 543 NW2d 62 (1995), the judgment of divorce stated, "It is further ordered and adjudged that the division of the marital property shall be reserved for future consideration of this Honorable Court." The plaintiff filed an unsuccessful motion to set aside the judgment of divorce. *Id.* On appeal, this Court cited the express provision in MCR 3.211(B)(3) which requires the judgment of divorce to include "a determination[2] of the property rights of the parties." *Id.* at 601 (footnote added). It noted that this court rule "ensures that divorce cases are not tried piecemeal subjecting the parties to a multiplicity of orders that could be appealed." *Id.*

In this case, the judgment of divorce resolved the parties' real property disputes, equally divided their bank and retirement accounts, and liquidated their securities. However, pursuant to the parties' stipulation, the trial court reserved the "distribution of all personal property, including but not limited to, motor vehicles, collections, and furniture and furnishings" to be arbitrated. By incorporating the impending, but incomplete, personal property arbitration into the judgment of divorce, the trial court failed to make a determination of the personal property rights of the parties. Contrary to the purpose of MCR 3.211(B)(3), the piecemeal judgment of divorce and arbitration award subjected the parties to a multiplicity of orders that could be appealed. *Yeo, supra* at 601. Consequently, the judgment of divorce violated MCR 3.211(B)(3).

Plaintiff suggests that defendant's argument regarding MCR 3.211(B)(3) should fail because the parties agreed to binding arbitration. This Court rejected a similar argument in *Yeo, supra* at 602, when it noted that a "stipulation by the parties regarding a matter of law is not binding on a court."

Even if the trial court violated MCR 3.211(B)(3), the record in this case shows that the arbitrator encouraged the parties to submit requests for personal property and held an arbitration hearing to address personal property distribution. Although defendant refused to attend this hearing for reasons unrelated to the bifurcated judgment, defendant was not denied the opportunity to fully litigate the personal property distribution during arbitration. Furthermore, on appeal, defendant does not object to the personal property distribution or assert that he was prejudiced by this distribution. Consequently, the trial court's error was harmless.

## Dissipation Provision

Next, defendant argues that he did not consent to the dissipation provision in the judgment of divorce. The trial court's findings concerning the validity of the parties' consent to a settlement agreement are reviewed for an abuse of discretion. *Keyser v Keyser,* 182 Mich App 268, 270; 451 NW2d 587 (1990). A court abuses its discretion when it chooses an outcome that lies outside the range of reasonable and principled outcomes. *Maldonado v Ford Motor Co,* 476 Mich 372, 388; 719 NW2d 809 (2006).

---

[2] The *Random House Webster's College Dictionary* (2001) defines "determination" as "the act of coming to a decision or of resolving something." Black's Law Dictionary (8th ed) defines "determination" as "A final decision by a court or administrative agency."

In this case, the parties' settlement agreement constituted a contract between the parties. *Mikonczyk v Detroit Newspapers, Inc*, 238 Mich App 347, 349; 605 NW2d 360 (1999). In relevant part, this settlement agreement stated:

> As of the date of the Judgment of Divorce, all bank accounts shall be divided equally. Defendant shall pay the balance of court ordered attorney fees to Defendant's counsel before said division of accounts.

Although defendant claimed that he signed the settlement agreement under duress, the trial court rejected this claim and he does not challenge the enforceability of the settlement agreement on appeal. Rather, on appeal, defendant alleges that plaintiff unilaterally modified the settlement agreement by adding the following dissipation provision to the proposed judgment of divorce:

> As of the date of this Judgment of Divorce, all bank accounts shall be divided equally. Defendant shall pay the balance of court ordered attorney fees to Defendant's counsel before said division of accounts. *If there has been any dissipation from the parties' bank accounts, other than status quo payments, the Court retains jurisdiction to deal with the issue of dissipation.* [Emphasis added.]

Modifications to a contract require mutual assent. *Quality Products & Concepts Co v Nagel Precision, Inc*, 469 Mich 362, 372-373; 666 NW2d 251 (2003). Absent clear and convincing evidence of mutual assent, no new and modified contract exists. *Id.* In this case, plaintiff signed the proposed judgment of divorce. At the hearing regarding the entry of the proposed judgment, defendant's attorney stated that he reviewed the original settlement agreement and the parties went "back and forth, made a few changes . . . ."

Even if the trial court did not err when it found that the parties' attorneys likely negotiated the modifications to the settlement agreement, MCR 2.507(G) requires:

> An agreement or consent between the parties or their attorneys respecting the proceedings in an action, subsequently denied by either party, is not binding unless it was made in open court, or unless evidence of the agreement is in writing, subscribed by the party against whom the agreement is offered or by that party's attorney. [See *Kloian v Domino's Pizza, LLC*, 273 Mich App 449, 456; 733 NW2d 766 (2006).]

Until defendant or his attorney signed the agreement to the modifications or the settlement modifications were established in open court, they were free to disavow any oral agreement. See *Gojcaj v Moser*, 140 Mich App 828, 835; 366 NW2d 54 (1985). Neither defendant nor his attorney signed the proposed judgment of divorce containing the dissipation provision. Furthermore, neither defendant nor his attorney specifically consented to the dissipation provision in open court. Thus, pursuant to MCR 2.507(G), defendant was not bound by the dissipation provision in the proposed judgment of divorce. Consequently, the trial court abused its discretion when it entered the proposed judgment of divorce. See *Rivkin v Rivkin*, 181 Mich App 718, 719-721; 449 NW2d 685 (1989). Therefore, this Court remands the judgment of divorce to the trial court for amendment in accordance with the settlement agreement. On remand, the trial court should not consider any issues resolved in the settlement agreement.

-3-

Rather, remand is limited for amendment of the judgment of divorce consistent with the settlement agreement and further proceedings regarding dissipation.

## Arbitration: Dissipation and Adjournment

In a related argument, defendant makes several arguments for vacation of the trial court's order adopting the arbitrator's award. This Court reviews de novo a trial court's order involving an arbitration award. *Washington v Washington*, 283 Mich App 667, ___; ___ NW2d ___ (2009).

First, defendant argues that the trial court erred when it ordered the parties to arbitrate the issue of dissipation from the parties' bank accounts because he had not agreed to that arbitration. Again, in the settlement agreement, the parties agreed:

> [t]he distribution of all personal property, including but not limited to, motor vehicles, collections, and furniture and furnishings . . . shall be arbitrated by John Lascoe.

Consequently, the trial court entered a stipulation and order for binding arbitration on the issue of property distribution, attorney fees, and overpayment of child and spousal support.

"'Arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he had not agreed so to submit.'" *Amtower v William C Roney & Co*, 232 Mich App 226, 233-234; 590 NW2d 580 (1998), quoting *AT & T Technologies, Inc v Communications Workers of America*, 475 US 643, 648; 106 S Ct 1415; 89 L Ed 2d 648 (1986). The parties in this case agreed to the distribution of personal property. Black's Law Dictionary (8th ed) defines "personal property" as "Any movable or intangible thing that is subject to ownership and not classified as real property." Bank accounts are personal property. Even though the parties agreed to the equal division of these bank accounts in the settlement agreement, questions arising out of the distribution of these bank accounts were appropriate for arbitration under the parties' agreement. Because the arbitrator ultimately refused to arbitrate the issue of dissipation contrary to the trial court's order, remand is necessary for further proceedings with respect to this issue only. Thus, the dissipation portion of the trial court's June 2, 2008 order submitting the dissipation issue to arbitration is vacated.

Second, defendant argues that the trial court's order adopting the arbitrator's award, which addressed issues aside from dissipation, should be vacated because the arbitrator refused defendant's request for an adjournment. A party must apply to vacate or modify an arbitrator's award for a trial court to review that award. See MCL 600.5081(1). Pursuant to MCR 3.602(J)(3), in a domestic relations case, the motion to vacate must be filed within 21 days of the award. Failure to timely request the vacation of the award precludes relief on appeal. In this case, there is no evidence in the lower court record that defendant timely filed a motion with the trial court to vacate the award. MCR 3.602(J)(3). Thus, relief is precluded on appeal.

## Adam's Testimony

Defendant also argues that this Court should reverse the trial court's order regarding the motions to modify custody and parenting time because it improperly limited Adam's testimony

-4-

at the evidentiary hearing to matters of abuse or mistreatment. The trial court has the discretion to control the questioning of witnesses. *Persichini v William Beaumont Hosp*, 238 Mich App 626, 632; 607 NW2d 100 (1999). This Court reviews a trial court's decision to admit or exclude evidence for an abuse of discretion. *Elezovic v Ford Motor Co*, 472 Mich 408, 419; 697 NW2d 851 (2005). This Court "must affirm custody orders on appeal unless the trial court's findings were against the great weight of the evidence, the court committed a palpable abuse of discretion, or the court made a clear legal error on a major issue." *Surman v Surman*, 277 Mich App 287, 294; 745 NW2d 802 (2007).

A child's preference is one of the many factors for a trial court to consider in a custody dispute. *Surman, supra* at 298, citing *Burghdoff v Burghdoff*, 66 Mich App 608, 612; 239 NW2d 679 (1976). This Court has stated:

> a child who is the subject of a custody dispute, who most likely has already undergone the agony inherent in the breakup of a family unit, should not be subjected to the additional pain of having to testify in open court and be cross-examined as he would be if he were a witness in ordinary criminal or civil litigation. [*Burghdoff, supra* at 614.]

Consequently, this Court held that the best way for a trial court to determine the preference of a child is to hold an in camera conference regarding that preference. *Id.* at 612.

In *Surman, supra* at 290, the defendant filed a motion for custody following one of her children's allegations of abuse. The child testified at trial regarding these allegations. *Id.* at 297. On appeal, the plaintiff claimed that the trial court erred by failing to discuss the allegations in an in camera conference and, instead, allowing the child to testify in open court. *Id.* at 294. This Court stated:

> although courts should seek to avoid subjecting children to the distress and trauma resulting from testifying and being cross-examined in court, concerns over the child's welfare are outweighed when balanced against a parent's due process rights. [*Id.* at 302.]

With respect to allegations of abuse, this Court noted that the child and the offending parent will often have the only firsthand knowledge of the abusive incident. *Id.* at 303. This Court also noted that, unlike the child's preference, abuse allegations require trial courts to "make credibility determinations, weigh the evidence, and . . . resolve factual conflicts." *Id.* This Court concluded, "when necessary to facilitate a trial court's assessment of the child's best interests, a trial court may call a child to testify in court concerning his or her allegations of abuse during a child custody proceeding." *Id.*

Relying on this Court's language in *Surman*, defendant argues that Adam's testimony should not have been limited to allegations of abuse. Rather defendant notes that Adam was the only witness, aside from plaintiff, who had firsthand knowledge regarding other interactions between Adam and plaintiff. Thus, defendant argues that Adam's testimony was necessary to facilitate the trial court's assessment of the best interest factors. This Court need not address this question here because the trial court's limitation of Adam's testimony was harmless. MRE 103(a).

-5-

Defendant questions plaintiff's credibility with respect to her testimony regarding her isolation of Adam from friends, Adam's birthdays, and Adam's enjoyment of activities at her home. However, defendant explored these matters by testifying himself and cross-examining plaintiff. Also, even though the trial court had defendant focus his questions to Adam on abuse and mistreatment, it allowed defendant to explore these matters with plaintiff. Defendant does not argue that Adam would have testified to any facts in addition to the testimony already presented at the evidentiary hearing. Moreover, as plaintiff argues, the trial court may not have credited additional testimony because, in its order regarding the motions to modify custody and parenting time, it repeatedly questioned Adam's truthfulness. In sum, any limitation of Adam's testimony was harmless.

## Proper Cause or a Change of Circumstances

Even though the trial court revisited its custody order because plaintiff demonstrated proper cause in her motion to modify custody and parenting time, defendant claims that the trial court erred when it found that he failed to demonstrate proper cause or a change of circumstances to revisit custody in his concurrent motions to modify custody and parenting time. The determination of whether there is proper cause or a change in circumstances sufficient to reconsider a custody award is a question of fact, which this Court reviews under the great weight of the evidence standard. *Fletcher v Fletcher*, 447 Mich 871, 877-878; 526 NW2d 889 (1994). According to this standard, "a reviewing court should not substitute its judgment on questions of fact unless they 'clearly preponderate in the opposite direction.'" *Id.* at 878, quoting *Murchie v Standard Oil Co*, 355 Mich 550, 558; 94 NW2d 799 (1959).

"[I]f a child custody dispute has arisen from another action in the circuit court, the court may modify or amend its previous judgments or orders for proper cause shown or because of change of circumstances . . . .'" *Vodvarka v Grasmeyer*, 259 Mich App 499, 508; 675 NW2d 847 (2003), quoting MCL 722.27(1)(c). "[P]roper cause means one or more appropriate grounds that have or could have a significant effect on the child's life to the extent that a reevaluation of the child's custodial situation should be undertaken." *Id.* at 511. "The appropriate ground(s) should be relevant to at least one of the twelve statutory best interest factors,[3] and must be of

---

[3] Pursuant to MCL 722.23, the "'best interests of the child" means the sum total of the following factors to be considered, evaluated, and determined by the court:

(a) The love, affection, and other emotional ties existing between the parties involved and the child.

(b) The capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any.

(c) The capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs.

(d) The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.

(continued...)

20-21437-dob    Doc 97    Filed 08/20/21    Entered 08/20/21 14:24:35    Page 14 of 25

such magnitude to have a significant effect on the child's well-being." *Id.* at 512 (footnote added). Change of circumstances means that, "since the entry of the last custody order, the conditions surrounding custody of the child, which have or could have a *significant* effect on the child's well-being, have materially changed." *Id.* at 513. If a movant does not prove, by a preponderance of the evidence, that either proper cause or a change of circumstances exists, then the trial court is precluded from holding an evidentiary hearing. *Id.* at 508.

At the evidentiary hearing, Adam testified regarding several confrontations with plaintiff that occurred after the judgment of divorce. First, Adam testified that, when he dented plaintiff's rolling pin, she pulled his laptop computer, which was connected to cords, off his desk and damaged model cars in the process. Defendant also claimed that plaintiff laughed at Adam when he later cried about the computer in front of his friends at school. Second, plaintiff restricted laptop and cellular telephone use to punish Adam on other occasions. Third, plaintiff poured water on Adam's spaghetti dinner after he poured cheese on her plate without permission. Fourth, during a parenting time exchange, plaintiff and Adam physically struggled for Adam's guitar and Adam attempted to step on plaintiff's foot. Adam also testified regarding several confrontations with plaintiff that occurred before the judgment of divorce, including: 1) plaintiff's threat to take Adam to a juvenile detention facility, and 2) plaintiff's spraying Windex in Adam's eyes, without injury, after he sprayed it in her hair.

The trial court considered Adam's allegations. It repeatedly acknowledged that plaintiff had difficulty with disciplining Adam. However, the trial court also found that Adam embellished the allegedly poor environment at plaintiff's home. Moreover, it found that the confrontations between plaintiff and Adam were infrequent and never resulted in injury, calls to the police, or medical care. Despite plaintiff's difficulty with disciplining Adam, the trial court found that plaintiff's home environment is stable and satisfactory. It noted Adam's good grades, photographic evidence of Adam's positive lifestyle with plaintiff, and Adam's negative mood changes primarily when defendant is present or in contact during plaintiff's parenting time. In light of these findings, it was not against the great weight of the evidence for the trial court to

---

(…continued)

(e) The permanence, as a family unit, of the existing or proposed custodial home or homes.

(f) The moral fitness of the parties involved.

(g) The mental and physical health of the parties involved.

(h) The home, school, and community record of the child.

(i) The reasonable preference of the child, if the court considers the child to be of sufficient age to express preference.

(j) The willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents.

(k) Domestic violence, regardless of whether the violence was directed against or witnessed by the child.

(*l*) Any other factor considered by the court to be relevant to a particular child custody dispute." [MCL 722.23.]

-7-

conclude that plaintiff's difficulty with disciplining Adam did not have a significant effect on Adam's well-being such that proper cause or a change of circumstances existed.

### Established Custodial Environment

Defendant argues that the trial court erred in finding that an established custodial environment existed only with plaintiff. Whether an established custodial environment exists is a question of fact, which this Court reviews under the great weight of the evidence standard. *Berger v Berger*, 277 Mich App 700, 706; 747 NW2d 336 (2008).

MCL 722.27(1)(c) permits a court to modify an order regarding custody of a child for either proper cause or a change of circumstances, but provides:

> [t]he court shall not modify or amend its previous judgments or orders or issue a new order so as to change the established custodial environment of a child unless there is presented clear and convincing evidence that it is in the best interest of the child. The custodial environment of a child is established if over an appreciable time the child naturally looks to the custodian in that environment for guidance, discipline, the necessities of life, and parental comfort. The age of the child, the physical environment, and the inclination of the custodian and the child as to permanency of the relationship shall also be considered.

Thus, to resolve a custody dispute, a trial court must first determine if an established custodial environment exists in order to discern the appropriate burden of proof. *LaFleche v Ybarra*, 242 Mich App 692, 695-696; 619 NW2d 738 (2000). This Court advised:

> An established custodial environment is one of significant duration in which a parent provides care, discipline, love, guidance, and attention that is appropriate to the age and individual needs of the child. It is both a physical and a psychological environment that fosters a relationship between custodian and child and is marked by security, stability, and permanence. [*Berger, supra* at 706.]

If the relief requested in the motion would not change the custodial environment, the trial court may modify a custody order if it finds, by a preponderance of the evidence, the modification would be in the child's best interests. *LaFleche, supra* at 696; *Rittershaus v Rittershaus*, 273 Mich App 462, 470; 730 NW2d 262 (2007). However, if the relief requested in the motion would change the custodial environment, the trial court may only modify the custody order if it finds, by clear and convincing evidence, the modification would be in the child's best interests. *LaFleche, supra* at 696.

Defendant suggests evidence that an established custodial environment existed with him, not plaintiff, for several reasons. First, he notes that, in photographs, Adam was wearing clothes that defendant purchased, as opposed to clothes that plaintiff purchased. Although the trial court found that Adam indeed looks to defendant for some such necessities of life, it concluded that plaintiff satisfies the majority of Adam's day to day needs. For example, plaintiff takes Adam to all doctor and dental appointments. Second, defendant notes that he encourages Adam's interest in art and guitar and claims that plaintiff does not. The trial court found that Adam looks to both parties for guidance and both parties encourage Adam's extracurricular interests. However, it

-8-

concluded that plaintiff is primarily involved with Adam's schooling because of the parenting time schedule. It was not against the great weight of the evidence to find that Adam primarily looks to plaintiff for the necessities of life and guidance. In light of the parenting time schedule, plaintiff spent all but Tuesday evenings, alternating weekends, and some holidays during the school year with Adam. See *Mogle v Scriver*, 241 Mich App 192, 198; 614 NW2d 696 (2000) (the child lived with the plaintiff almost exclusively for two years and, thereafter, continued to spend the majority of her days and nights with the plaintiff).

Next, defendant suggests that the trial court should have given more weight to his rare need to discipline Adam as compared to plaintiff's difficulties with disciplining Adam. Again, the trial court found that plaintiff had demonstrated difficulty with disciplining Adam. However, it also found that defendant fostered Adam's disciplinary problems with plaintiff. Moreover, it found "no credible testimony that Defendant disciplines Adam." The trial court later found that defendant "treats Adam more as a best friend instead of a son" and "completely failed to give Adam guidance on how to deal with difficult situations." Because "the trial court is in the best position to determine the credibility of witnesses," this Court will not substitute its judgment regarding discipline for that of the trial court. *Berger, supra* at 707-708.

Defendant assumes that, during the in camera conference, Adam expressed a preference to live with defendant. Consequently, defendant argues that this preference should have been given consideration in determining the established custodial environment. On the contrary, the established custodial environment test is whether the parent provides care, discipline, love, guidance, and attention that is appropriate to the age and needs of the child. *Berger, supra* at 706. Even if a teenager might prefer otherwise, this Court has stated rules, daily guidance, discipline and consistent parenting are what foster the security, stability and permanence of a home environment. Thus, it was not against the great weight of the evidence to find that the established custodial environment with plaintiff was not destroyed by Adam's preference. In sum, it was not clear error to apply the preponderance of the evidence standard to plaintiff's motion to modify custody and parenting time.

### Best Interest Factors

Defendant argues that the trial court's findings regarding the best interests of Adam, MCL 722.23(a), (b), (c), (d), (e), (f), (g), (h), and (j), were against the great weight of the evidence and the trial court's treatment of MCL 722.23(i) constituted an abuse of discretion.
<u>Factor (a)</u>

The trial court found that factor (a), the "love, affection, and other emotional ties existing between the parties involved and the child," slightly favored plaintiff. The trial court found that both parties love Adam and the record supports the finding.

On appeal, defendant notes that Adam testified that he hates plaintiff, he does not like to talk to her, he feels lonely at her home, and they have physical altercations. He also notes that Adam has not hugged or kissed plaintiff in over a year. The trial court questioned Adam's testimony regarding his emotional ties to plaintiff. It found that Adam embellished his poor home environment with plaintiff to support defendant and any difficulties in their relationship were "fueled in part" by defendant. Even if plaintiff and Adam do not hug and kiss, plaintiff testified that they express affection in other ways through prayer or cuddling while watching

-9-

television. Furthermore, the trial court cited photographs demonstrating a positive relationship between plaintiff and Adam and plaintiff testified that Adam is in a good mood during parenting time even if he becomes upset at parenting time exchanges.

With respect to Adam's emotional ties to defendant, the trial court found that defendant has an overly dependent relationship with Adam. It cited defendant's repeated telephone calls to Adam and his creation of the "mommy free zone" to alienate Adam from plaintiff. It found evidence that defendant cries and holds Adam's hand at parenting time exchanges to be "outrageous" and burdensome. Because "the trial court is in the best position to determine the credibility of witnesses," this Court will not substitute its judgment regarding the emotional ties between Adam and the parties for that of the trial court. *Berger, supra* at 707-708. The trial court did not err in finding that factor (a) slightly favored plaintiff. Factor (b)

The trial court found that factor (b), the "capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any," favored plaintiff.

Like his arguments regarding factor (a), defendant claims that plaintiff lacks the capacity to give Adam love, affection, and guidance, citing her difficulty with disciplining Adam. Even though the trial court found that plaintiff had difficulty restraining her emotions when disciplining Adam, it concluded that she has the "appropriate disposition for resolving disputes." For example, plaintiff testified that she punishes Adam with consequences, such as lost television time. On the contrary, as we note, *supra*, the trial court found "no credible testimony that Defendant disciplines Adam." The trial court cited defendant's testimony that he knew that Adam pushed plaintiff, but failed to act. Again, the trial court stated that defendant "treats Adam more as a best friend instead of a son" and "completely failed to give Adam guidance on how to deal with difficult situations." The trial court also questioned defendant's emotional stability because he cries during parenting time exchanges and repeatedly cried during the evidentiary hearing. It suggested that defendant's emotional instability resulted in Adam's recent outbursts and dependence on a stuffed animal, "Snoopy."

Defendant also claims that the trial court should have given more attention to his support of Adam's schooling and extracurricular activities. The trial court found that defendant encouraged Adam's art skills and interest in guitar. Indeed, defendant took Adam to an art show where he won a prize and had a friend commission a piece of art from Adam. However, defendant failed to support Adam's religious education during his parenting time. Although defendant attended parent teacher conferences, the trial court expressed concern that Adam failed several math tests after parenting time with defendant. On the contrary, the trial court found that plaintiff encouraged Adam's extracurricular activities, religion, prayer, and education. Arguably, plaintiff discontinued Adam's guitar lessons when he lost interest, but defendant only renewed the lessons when Adam renewed interest. The trial court did not err in finding that factor (b) favored plaintiff.

Factor (c)

The trial court found that factor (c), the "capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs" did not

-10-

favor either party. Defendant argues that the trial court should have given more weight to his employment and financial support of Adam. He also notes that, in photographs, Adam consistently wears clothes that defendant provides, instead of the clothes that plaintiff provides.

Defendant is an engineer at General Motors and plaintiff was a homemaker during the marriage. Plaintiff is college-educated in business administration and has considered reentering the job market. She has applied for approximately six positions in six months, but has not received a position yet. She estimates that she could earn between $30,000 and $40,000. In the meantime, the record shows that plaintiff received a substantial property settlement following the judgment of divorce and child support. Even if Adam chooses to wear the clothing that defendant provided, there is no evidence that plaintiff fails to provide food and clothing. Moreover, plaintiff facilitates all of Adam's medical care. Because this Court has cautioned trial courts against placing undue reliance on factor (c), noting that such reliance would unfairly disadvantage mothers and homemakers, the trial court did not err in finding that factor (c) did not favor either party. See *Mazurkiewicz v Mazurkiewicz*, 164 Mich App 492, 500; 417 NW2d 542 (1987).

### Factor (d)

The trial court found that factor (d), the "length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity," favored plaintiff. The trial court found that plaintiff and Adam had lived in the same residence for approximately three years, whereas defendant and Adam live in the marital home, near school and friends. Despite this stability in the physical environment of both homes, the trial court found that the emotional environment in defendant's home was unstable. It noted defendant's pathological dependence on Adam, the "mommy free zone" that defendant created at his home, and defendant's emotional outbursts and crying. Although defendant claims that the trial court should have given more weight to Adam's physical environment, near school and friends, this Court will not substitute its judgment regarding the stability of the physical environment compared to the stability of the emotional environment for that of the trial court. *Berger, supra* at 707-708. The trial court did not err in finding that factor (d) favored plaintiff.

### Factor (e)

The trial court found that factor (e), the "permanence, as a family unit, of the existing or proposed custodial home or homes," did not favor either party. The trial court found that plaintiff and Adam live in an apartment outside Adam's school district, whereas defendant and Adam live in the marital home. Defendant suggests on appeal that plaintiff's home lacks permanence because she leases an apartment, but there is no evidence of anticipated disruption in the record. Rather, the trial court found that the living arrangements had been permanent since the parties' separation. Consequently, the trial court did not err in finding that factor (e) did not favor either party.

### Factor (f)

The trial court found that factor (f), the "moral fitness of the parties involved," slightly favored plaintiff. When it analyzed this factor, the trial court addressed the parties' blame for one another and the resulting failure of both parties to communicate about parenting Adam. It

-11-

also found that defendant's unstable parenting caused Adam to fail to tell the truth under oath. Although the trial court did not expressly rely on these facts, plaintiff offered evidence that: 1) defendant lied to his employer, 2) accused plaintiff's attorney of bribing a judge to uphold defendant's traffic offense, even though defendant claimed he was laughing at the time, and 3) defendant discusses the divorce in Adam's presence and models disrespect for authority and women.

Defendant claims that the trial court should have given weight to Adam's allegations of abuse when it considered this factor. However, as we note, *supra*, the trial court opined that Adam embellished the allegedly poor environment at plaintiff's home and, despite the allegations, the trial court found that Adam thrived under plaintiff's care. Because this Court has stated that the moral fitness of the parties is only relevant to the parent-child relationship and the effect of any conduct on the relationship, the trial court did not clearly err in failing to give Adam's allegations weight when it considered this factor. *Fletcher, supra* at 887.

Defendant also argues that the trial court should have considered plaintiff "isolating [Adam] from social development." Such conduct is not necessarily relevant to factor (f), which generally addresses "verbal abuse, drinking problems, driving record, physical or sexual abuse and other illegal or offensive behaviors." *Fletcher, supra* at 887 n 6. Regardless, defendant does not cite to the record or explain his social development claim on appeal. The record shows that Adam did not want to talk on the phone or invite friends to her home. Consequently, plaintiff took him to sporting events, dances and religious education to interact with other children. In light of this evidence, the trial court did not clearly err in failing to consider Adam's social development in factor (f) and the trial court did not err in finding that factor (f) slightly favored plaintiff.

Factor (g)

The trial court found that factor (g), the "mental and physical health of the parties involved," favored plaintiff. It concluded that the parties were in good physical health. As defendant notes, plaintiff asserted her therapist-plaintiff privilege so evidence of her family therapy with Dr. Andrew Maltz was precluded. Nevertheless, contrary to defendant's claim, the trial court did not ignore plaintiff's difficulty with disciplining Adam in considering this factor. Rather, it found that plaintiff demonstrated some emotional control problems when disciplining Adam.

The trial court found that defendant was psychologically dependent on Adam. It also suggested that defendant was emotionally unstable because he cried approximately seven times during the evidentiary hearing and cries during parenting time exchanges. Furthermore, it noted that defendant's distorted view of the legal system was inappropriate for Adam. On appeal, defendant claims that the trial court was not qualified to make these findings. However, the trial court's findings were based solely on inferences from the record. Defendant personally testified that he experienced sleeping and stomach problems because he was separated from Adam and, at the time of the evidentiary hearing, he testified that he still felt emotionally charged about the divorce. Also, the trial court's inferences were supported by Dr. Robert Erard's opinions and observations formed while watching the evidentiary hearing. As we discuss, *infra*, the trial court did not abuse its discretion when it allowed Dr. Erard to testify. Consequently, the trial court did not err in finding that factor (g) favored plaintiff.

-12-

## Factor (h)

The trial court found that factor (h), the "home, school, and community record of the child," did not favor either party. The trial court found that, despite some failing math tests after defendant's parenting time, Adam does "extremely well in school." Adam had all As and one B on his last report card and received the school's award for positive attitude, character and excellence. Defendant claims that he is the only party to expose Adam to the community. However, the trial court found that both parties support Adam's extracurricular activities. However, plaintiff testified that she takes Adam to sporting events, dances and religious education to interact with other children.

Defendant also claims that he has a better home record that plaintiff. However, in light of the trial court's finding that the emotional environment in defendant's home was unstable in factor (d), this claim fails.

## Factor (i)

Although the trial court did not reveal Adam's preference, the trial court stated that it took Adam's preference into consideration according to factor (i). On appeal, defendant claims that, in light of the trial court's ultimate ruling, it only gave "lip service" to that preference. Defendant's argument fails because a child's preference does not automatically outweigh all other best interest factors. *Treutle v Treutle*, 197 Mich App 690, 694-695; 495 NW2d 836 (1992). Furthermore, the best interest factors need not be given equal weight. *McCain v McCain*, 229 Mich App 123, 131; 580 NW2d 485 (1998). Thus, defendant failed to demonstrate that the trial court abused its discretion in its consideration of this factor.

## Factor (j)

The trial court found that factor (j), the "willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents," favored plaintiff. The trial court concluded that the each party interferes with the other party's parent-child relationship. For example, the trial court stated that both parties call Adam too frequently during the other party's parenting time. Plaintiff restricted Adam's cellular telephone use as a punishment on occasion. On the other hand, defendant established a "mommy free zone" with Adam in which they do not discuss plaintiff in defendant's home. Moreover, in Adam's presence, defendant told plaintiff that Adam was going to testify against her and defendant discussed the custody battle with Adam weekly. The trial court also noted that both parties fail to communicate with one another about Adam. However, the trial court apparently excused plaintiff's failure to some degree because it found credible plaintiff's claim that she stopped attempting to communicate with defendant because he failed to respond. In contrast, defendant completely refused to talk to plaintiff and insisted they communicate through their attorneys.

Defendant suggests that the trial court should have given some weight to his willingness to equally share parenting time, as opposed to plaintiff's request for sole legal and physical custody, with supervised parenting time. Even if the trial court had considered the parties' legal strategy as evidence of their facilitation of the other party's parent-child relationship, the facts do not clearly preponderate in the opposite direction. Plaintiff did not request total separation from

-13-

defendant, but only supervised parenting time in light of her fears regarding Adam's best interests. Consequently, the trial court did not err in finding that factor (j) favored plaintiff.

In sum, the trial court's findings regarding best interest factors (a), (b), (c), (d), (e), (f), (g), (h), and (j) were not against the great weight of the evidence. Moreover, its treatment of factor (i) did not constitute an abuse of discretion. Thus, defendant's claim that the trial court's order modifying the parenting time schedule constituted an abuse of discretion fails.

### Dr. Erard's Testimony

Defendant argues that this Court should reverse the trial court's order regarding the motions to modify custody and parenting time because it improperly admitted Dr. Erard's testimony at the evidentiary hearing. Again, this Court reviews a trial court's decision to admit or exclude evidence for an abuse of discretion. *Elezovic, supra* at 419.

In this case, defendant called Dr. Maltz to testify. Plaintiff argued that Dr. Maltz was the treating therapist for family therapy between Adam, plaintiff and defendant and plaintiff asserted her therapist-patient privilege. Consequently, the trial court excluded any evidence arising out of Dr. Maltz's treatment, including his opinions regarding appropriate parenting time. Later, plaintiff offered testimony from a clinical and forensic psychologist, Dr. Erard. Dr. Erard was present throughout the evidentiary hearing. Although the trial court precluded plaintiff from eliciting evidence related to the parties' medical or mental history, it allowed plaintiff to elicit Dr. Erard's testimony regarding his opinions and observations formed while watching the evidentiary hearing.

Defendant claims that plaintiff's assertion of the privilege with respect to Dr. Maltz should have precluded her elicitation of testimony from Dr. Erard regarding his observations of the evidentiary hearing. Pursuant to MCR 2.314(B)(1), "[a] party who has a valid privilege may assert the privilege and prevent discovery of medical information relating to his or her mental or physical condition." See *Landelius v Sackellares*, 453 Mich 470, 475; 556 NW2d 472 (1996). The physician-patient privilege, MCL 600.2157, provides in pertinent part:

> Except as otherwise provided by law, a person duly authorized to practice medicine or surgery shall not disclose any information that the person has acquired in attending a patient in a professional character, if the information was necessary to enable the person to prescribe for the patient as a physician, or to do any act for the patient as a surgeon.

Similarly, psychologists are prohibited from disclosing privileged communications unless the patient waives the privilege. MCL 333.18237.

The parties did not dispute at the evidentiary hearing that plaintiff had a valid privilege with Dr. Maltz. Therefore, plaintiff could assert that privilege to prevent the discovery of privileged communications or information acquired during the family's therapy. MCR 2.314(B)(1); *Landelius, supra* at 475.

Furthermore, MCR 2.314(B)(2) limits a party's presentation of evidence following the party's assertion of the privilege. Specifically MCR 2.314(B)(2) provides in pertinent part:

-14-

if a party asserts that the medical information is subject to a privilege and the assertion has the effect of preventing discovery of medical information otherwise discoverable under MCR 2.302(B), the party may not thereafter present or introduce any physical, documentary, or testimonial evidence relating to the party's medical history or mental or physical condition. [MCR 2.314(B)(2); see also *Hyde v University of Michigan Bd of Regents*, 226 Mich App 511, 520; 575 NW2d 36 (1997) (Because the plaintiff asserted his physician-patient privilege, he could not offer testimony regarding his noneconomic damages, including mental anguish, outrage, embarrassment and humiliation.).]

In light of MCR 2.314(B)(2), the court correctly concluded that plaintiff was precluded from introducing any substantive evidence relating to *her* medical history or mental or physical condition. Dr. Erard testified regarding his observations and opinions formed during the evidentiary hearing. With respect to plaintiff, Dr. Erard only offered an opinion that plaintiff and Adam have a good relationship despite some evidence of plaintiff's insensitivity to Adam's feelings. Defendant does not cite, and the record does not show, that Dr. Erard offered any substantive evidence of plaintiff's medical history or mental or physical condition in violation of MCR 2.314(B)(2). Furthermore, even if Dr. Erard's opinions regarding defendant, such as his testimony regarding defendant's paranoia, were characterized as evidence of defendant's mental condition, MCR 2.314(B)(2) did not preclude this evidence.

Defendant also argues that the trial court improperly admitted evidence predating the judgment of divorce by allowing Dr. Erard to impeach the parties with statements made by the parties in a prejudgment evaluation and recorded in Dr. Erard's prejudgment report. A waiver is the intentional and voluntary relinquishment of a known right. *McDonald v Farm Bureau Ins Co*, 480 Mich 191, 204; 747 NW2d 811, 819 (2008). When defendant's attorney agreed to the use of the report for impeachment at the evidentiary hearing, defendant waived any challenges to impeachment testimony on appeal. *Id.*

## Judicial Disqualification

Defendant argues that there were several grounds to disqualify the presiding judge, Tracey A. Yokich. "In reviewing a motion to disqualify a judge, this Court reviews the trial court's findings of fact for an abuse of discretion and reviews the court's application of those facts to the relevant law de novo." *In re Contempt of Henry*, 282 Mich App 656, 679; 765 NW2d 44 (2009).

-15-

MCR 2.003 provides, in pertinent part:

(A) Who May Raise. A party may raise the issue of a judge's disqualification by motion, or the judge may raise it.

(B) Grounds. A judge is disqualified when the judge cannot impartially hear a case, including but not limited to instances in which:

(1) The judge is personally biased or prejudiced for or against a party or attorney.

To satisfy MCR 2.003(B)(1), the judge must have shown actual bias against the party or the party's attorney. *Armstrong v Ypsilanti Twp*, 248 Mich App 573, 597; 640 NW2d 321 (2001). Furthermore, a judicial ruling "almost never constitute[s] a valid basis for a motion alleging bias, unless the judicial opinion displays a 'deep-seated favoritism or antagonism that would make fair judgment impossible' and overcomes a heavy presumption of judicial impartiality." *Id.*, quoting *Cain v Dep't of Corrections*, 451 Mich 470, 496; 548 NW2d 210 (1996).

Defendant supports his claim for disqualification alleging prejudice evidenced by Judge Yokich's rulings. First, defendant alleges that Judge Yokich entered the judgment of divorce over his objection. However, defendant signed an enforceable settlement agreement. Judge Yokich considered defendant's allegations of duress, but ultimately found his allegations did not warrant setting aside that agreement. There was no evidence of deep-seated favoritism or antagonism toward defendant demonstrated in this ruling.

Second, defendant claims that a hearing on the motion to modify parenting time had been ordered since July 14, 2008, but Judge Yokich's adjournment of the September 4, 2008, hearing violated the 56-day rule in MCR 3.210. A trial court may extend the time for a hearing for good cause pursuant to MCR 3.210(C)(7). Judge Yokich's decision to adjourn the hearing so defendant could file a supplemental motion for a modification of custody may have constituted such good cause. The inconvenience to defendant involved with the delay, including rescheduling witnesses, does not evidence deep-seated favoritism or antagonism.

Third, defendant claims that Judge Yokich threatened, sua sponte, to deny defendant "access to the Court or any hearing" until he paid the arbitrator. Arguably, Judge Yokich ordered defendant to pay the arbitrator $1,350 and advised that the order was subject to the trial court's contempt power. Judge Yokich's threat of civil coercion to force compliance with the court order to pay the arbitrator does not demonstrate deep-seated favoritism or antagonism. Rather, it merely acknowledges defendant's agreement to be responsible for the costs of arbitration pursuant to MCL 600.5072(i).

Fourth, defendant alleges that Judge Yokich refused to schedule a hearing on his emergency motion for parenting time on Adam's birthday. He further alleges Judge Yokich's refusal was punishment for his filing of a claim of appeal from the judgment of divorce. There is no evidence that the refusal was punitive or demonstrated deep-seated antagonism. Rather, in his affidavit, defendant's attorney stated that Judge Yokich refused to schedule the motion because she did not believe birthday parenting time was an emergency.

-16-

Finally, defendant alleges that Judge Yokich refused his requests to appoint a guardian ad litem. As defendant maintains, the guardian ad litem may have resolved some conflicts between the parties. However, there is no evidence of deep-seated antagonism in the denial.

## Conclusion

We remand the judgment of divorce to the trial court for entry of an amended judgment of divorce consistent with the settlement agreement and for further proceedings. We vacate the dissipation portion of the trial court's June 2, 2008 order. We affirm the trial court's order adopting the arbitrator's award and affirm the trial court's order granting plaintiff's motion to modify parenting time, denying defendant's motion to modify parenting time, and denying plaintiff and defendant's motions to modify custody. We also affirm the trial court's order denying defendant's motion to disqualify Judge Yokich.

We do not retain jurisdiction. Costs to neither party.

/s/ Pat M. Donofrio
/s/ Kurtis T. Wilder
/s/ Donald S. Owens

-17-